United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH M. GIOVANNETTI, an individual,

Plaintiff,

v.

TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (HUMBOLDT STATE UNIVERSITY), a public entity,

Defendant.
_______________________________/

No. C 04-5514 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

Defendant's motion for summary judgment came on for hearing before this court on May 17, 2006. Plaintiff Joseph M. Giovannetti ("Giovannetti") appeared through his counsel, Robert S. Jaret and Arthur R. Siegel. Defendant, Humboldt State University ("HSU"), appeared through its counsel, Paul A. Brisso. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion for summary judgment in part and DENIES the motion in part, for the reasons stated at the hearing and as follows.

## BACKGROUND

This is an employment discrimination case. Plaintiff Giovannetti is American Indian, and a tenured professor at defendant HSU. He has been employed by HSU since 1994.

On September 12, 2001, plaintiff filed his first lawsuit against HSU, alleging that he had been subjected to discriminatory treatment based on his race. That lawsuit ended in a settlement agreement and release of claims on March 18, 2003, and the action was dismissed. See Declaration of William F. Mitchell in Support of Motion for Summary Judgment ("Mitchell Decl."), Ex. B.

Giovannetti alleges that, since the settlement and dismissal of the earlier lawsuit, HSU has continued to discriminate against him, partly in retaliation for his filing of the earlier lawsuit. Specifically, Giovannetti alleges that HSU discriminated and retaliated against him by: (1) removing him as chair of the Native American Studies Department ("NASD"); (2) refusing to hire qualified American Indian candidates he had recommended for the NASD, instead hiring less qualified white candidates; (3) reducing the faculty in the NASD and cancelling courses, including those taught by plaintiff; and (4) reducing the physical office space for the NASD. See First Amended Complaint, ¶ 10. In addition to these actions, Giovannetti alleges that "management level employees" subjected him to a continual pattern of harassing statements, such as "white makes right," and statements that refer to the "Native American perspective." See id. at ¶¶ 10, 20.

In response to these alleged actions, Giovannetti filed a formal discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH") on August 27, 2003. Id., Ex. A. A right to sue letter issued on October 1, 2004. Id., Ex. B. Several months later, on April 12, 2005, Giovannetti filed an amended discrimination charge so that he could add the allegations regarding his removal as chair of the NASD (not included in the original charge), for which he received a right to sue letter dated April 13, 2005. Id., Exs. C-D.

Giovannetti filed the instant action on December 30, 2004, and first amended complaint April 13, 2005. Plaintiff's amended complaint alleges four causes of action against HSU: (1) race discrimination in violation of California's Fair Employment and Housing Act ("FEHA") and Title VII; (2) hostile work environment and race-based harassment in violation of FEHA and Title VII; (3) retaliation in violation of FEHA and Title VII; and (4) failure to prevent discrimination and harassment in violation of FEHA.

HSU moves for summary judgment as to all four claims. In the alternative, HSU

seeks partial summary judgment.[1]

## DISCUSSION

A. Legal Standards

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Race Discrimination

Giovannetti alleges that HSU violated both Title VII and FEHA by discriminating against him because he is Native American. Specifically, Giovannetti points to his removal as chair of the NASD as evidence of this discrimination.[2] See Amended Complaint, ¶¶ 10, 17-18. HSU argues that the undisputed facts warrant summary judgment as to this claim.

---

[1] In addition, both parties have filed evidentiary objections to each side's evidence. Specifically, plaintiff has filed objections to the declarations of Robert Snyder, Denice Helwig, and Richard Vrem. Defendant has filed objections to the declarations of James Fenelon and plaintiff Giovannetti. The court hereby: (1) OVERRULES plaintiff's objections to the Snyder, Helwig, and Vrem declarations; and (2) OVERRULES defendant's objections to the Fenelon and Giovannetti declarations, with the exception of those statements in the Giovannetti declaration deemed inadmissible hearsay in the court's discussion herein.

[2] Neither Giovannetti's papers, nor his counsel's arguments at the hearing on this motion, were a model of clarity. Despite being asked repeatedly by the court to state the precise basis for his race discrimination claim, Giovannetti was unable to clearly set forth whether, in addition to his removal as chair, there are other bases upon which his prima facie case rests. Accordingly, the court concludes that Giovannetti's discrimination claim seeks relief based primarily upon his removal as chair of the NASD, and analyzes the claim accordingly.

United States District Court
For the Northern District of California

The framework for proving race discrimination is well-established.[3] An employee bears the initial burden of proving a prima facie case of unlawful discrimination. To establish a prima facie case, the employee must show (1) that he/she belongs to a protected class, (2) was performing according to his/her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) that other employees with qualifications similar to his/her own were treated more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). If the employee produces sufficient evidence to establish a prima facie case, the burden shifts to the employer-defendant to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). Finally, if the employer is able to articulate a legitimate, nondiscriminatory reason for its action, the employee is left with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the employee. The employee may satisfy this burden by proving that the legitimate reasons offered by defendant were factually untrue, thereby creating an inference that those reasons were merely a pretext for discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

The court's analysis here begins – and ends – with Giovannetti's prima facie case. Giovannetti successfully meets the first and third prongs of the McDonnell Douglas test. It is undisputed that he is Native American, and that he was in fact removed as chair of the NASD. As such, Giovannetti can establish that he is a member of a protected class, and that he suffered some adverse employment action. See, e.g., Saint Francis College v. Al-Khazraji, 481 U.S. 604, 612-13 (1987)(protected classes are those identifiable because of their ancestry or ethnic characteristics); Woodson v. Int'l Business Machines, 2006 WL

---

[3] Since California law under FEHA mirrors federal law under Title VII, analysis of Giovannetti's claim under Title VII will suffice for analysis of the FEHA claim as well. The same is true with respect to all claims, with the exception of Giovannetti's claim for failure to prevent discrimination and harassment.

United States District Court
For the Northern District of California

1195453, *4-5 (N.D. Cal. 2006)(defining adverse action as a substantial change in the terms and conditions of employment that can include a "reduction in an employee's potential for career advancement"). Giovannetti fails, however, to meet the second and fourth prongs of the McDonnell Douglas test. He has failed to establish either that he was performing according to HSU's legitimate expectations, or that other employees with qualifications similar to his own were treated more favorably.

With respect to the second element, Giovannetti has failed to introduce even minimal evidence, aside from his own statements contained in his declaration, that might prove that his job performance met HSU's legitimate expectations. Such evidence might normally consist of positive performance reviews, admissions by the employer, or even expert testimony as to an employer's legitimate expectations for the job at issue, and an analysis of the plaintiff's performance in light of those expectations. See, e.g., King v. Rumsfeld, 328 F.3d 145, 149-50 (4th Cir. 2003). Here, nothing of this nature has been introduced.[4]

By contrast, HSU has submitted evidence demonstrating that Giovannetti's performance was actually below standard, and replete with issues that HSU continually sought to address. See Declaration of Denice Helwig in Support of Motion for Summary Judgment ("Helwig Decl."), Ex. K (performance evaluation noting that Giovannetti's performance was "lacking" with respect to his management of the NASD). Indeed, the entire evidentiary record surrounding Giovannetti's removal as chair – consisting of an August 6, 2004 memo sent by Dean Robert Snyder to Giovannetti, an August 18, 2004 response from Giovannetti, and an August 27 letter from Dean Snyder finally terminating Giovannetti as chair – demonstrates that the overriding dispute between Giovannetti and HSU concerned Giovannetti's purportedly *unsatisfactory* performance as chair, and

[4] Although Giovannetti introduces, by way of supporting declaration, the expert opinion testimony of James Fenelon, who opines that Giovannetti suffered race discrimination, Dr. Fenelon makes no opinion regarding the nature of Giovannetti's performance as chair in light of HSU's expectations regarding the same. Accordingly, it is not probative on this point.

specifically concerned concrete issues relating to Giovannetti's attendance at meetings, treatment of others, and curriculum responsibilities. See Declaration of Robert A. Snyder in Support of Motion for Summary Judgment ("Snyder Decl."), Exs. J, K, M. Giovannetti does not, or else cannot, dispute this evidence with any material facts demonstrating that his performance was satisfactory. As such, the court finds that he has not met his burden as to the second element of his prima facie case.

Giovannetti meets the same fate with respect to the fourth element of his prima facie case. He fails to establish, or dispute with material facts, either that other employees with qualifications similar to his own were treated more favorably, or that HSU's action in terminating him as chair otherwise occurred under circumstances suggesting a discriminatory motive. See, e.g., McDonnell Douglas Corp., 411 U.S. at 802.

In his attempt to satisfy this burden, Giovannetti argues (1) that Dean Snyder's August 6, 2004 memo to him requiring him to agree to certain conditions in order to continue his tenure as chair, were not imposed on anyone else; and (2) that an unnamed associate dean, who was found guilty of viewing pornography, was not punished accordingly, or treated in any fashion similar to that imposed on Giovannetti. See Declaration of Plaintiff Joseph M. Giovannetti in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Giovannetti Decl."), ¶¶ 20, 22.

These arguments, however, are off-point. First, Giovannetti introduces no supporting facts demonstrating that any other persons were similarly situated to Giovannetti such that the imposition of the above conditions on Giovannetti – which required him to attend meetings, establish department procedures, log phone calls, and participate in a group assessment of the NAS curriculum – can be objectively assessed in the first place, let alone does he establish that these conditions were never imposed on anyone else. As for the unnamed associate dean, Giovannetti incorrectly assumes that the dean's viewing of inappropriate material can be viewed as sufficiently similar to Giovannetti's situation such that the two can be compared for purposes of proving disparate treatment. But even

United States District Court
For the Northern District of California

adopting this assumption, although Giovannetti submits evidence that the unnamed dean had in fact admitted to inadvertently possessing pornographic material on his computer at the university, he fails to introduce any evidence as to whether that dean was or was not punished, or what form any such punishment took, making it impossible to deduce whether Giovannetti was in fact treated less favorably under similar circumstances. See, e.g., Declaration of Robert S. Jaret in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Jaret Decl."), Ex. C. In sum, Giovannetti has failed to introduce any evidence that would satisfy the fourth element of his prima facie case, or create a material dispute regarding the same.

For the above reasons, Giovannetti cannot prove a prima facie case of unlawful race discrimination as a result of HSU's decision to remove him as chair of the NASD. Moreover, even if the court *were* to presume that Giovannetti had established a prima facie case, the above evidence would still serve to satisfy HSU's burden to articulate a legitimate, nondiscriminatory reason for its decision to remove Giovannetti as chair – namely, by establishing that Giovannetti was performing unsatisfactorily as chair. This, in turn, would shift the burden back to Giovannetti to prove that the reasons given by HSU were a pretext. Giovannetti cannot do so on the strength of any evidence presently before the court. "Pretext" means a dishonest explanation, or "a lie rather than an oddity or error." See, e.g., O'Regan v. Arbitration Forums, Inc., 264 F.3d 975, 983 (7th Cir. 2001). Giovannetti points to no evidence that either materially disputes HSU's reasons for the removal – as given in Dean Snyder's August 6, 2004 or August 27, 2004 memos – or independently proves those reasons to be a pretext. Instead, Giovannetti argues only that pretext can be proven because "a jury could conclude that Snyder's termination of Giovannetti as Chair for failing to attend meeting or return phone calls was pretextual," and that they could conclude "that Defendant's heightened response to Plaintiff's alleged poor performance suggests that the employer was engaged in a search for a pretextual basis for discipline...". See Opp. Br. at 18-19. Such reasoning is circular and conclusory.

United States District Court
For the Northern District of California

Giovannetti must first come forward with some evidence for finding pretext, such that a material dispute is created on the issue, rather than simply arguing pretext in the hopes that such argument will create a material dispute.

In sum, Giovannetti fails to meet even his minimal evidentiary burden in proving a prima facie case that HSU intentionally discriminated against him by removing him as chair of the NASD. Accordingly, the court's inquiry ends there, and summary judgment is GRANTED in favor of HSU as to Giovannetti's race discrimination claim under both Title VII and FEHA.

C. Hostile Work Environment and Race-Based Harassment

Giovannetti also invokes analogous provisions of Title VII and FEHA to assert a hostile work environment claim, claiming harassment on the basis of race. See 42 U.S.C. § 2000e-2(a)(1); Cal. Gov't Code § 12940(j). As a basis for this claim, Giovannetti highlights several allegedly harassing statements made to him by HSU employees. These statements can be classified as follows:

- A comment made by HSU employee Lois Risling in May of 1998, wherein Ms. Risling stated that "white makes right" while discussing the invitation of American Indian professors to speak at HSU's campus (Amended Complaint, ¶ 20; Opp. Br. at 4);

- Several comments made by HSU President Rollin Richmond in August 2003 and later in 2004, including (1) that Giovannetti's recommended candidates were not hired into the NASD because the NAS faculty search was "poorly run"; (2) that HSU had responsibilities to provide "the majority population with the opportunity to learn the history and perspective of the Indian heritage"; (3) that "non-Native professors can teach NAS courses maybe even better than native teachers"; and (4) comments about Giovannetti's "perspective" on Native American studies (Giovannetti Decl., ¶¶ 4, 9-11, Ex. B ; Opp. Br. at 5);

- Remarks made by Professor Michael Goodman of HSU, including that (1) Dr. Sherman, a Native American candidate, was a "demigod" and "nothing but a storyteller"; (2) that he did not understand what was meant by the "Native American perspective"; (3) and that "whoever gets hired into NAS [by a search committee] sure isn't going to get tenure as a result of a lawsuit" (Giovannetti Decl., ¶ 36; Opp. Br. at 6);

- Statements by Dean Carlton of HSU that the NASD curriculum "ha[d] not been approved" and that "anyone can teach NAS, all they need

United States District Court
For the Northern District of California

are the book" (Giovannetti Decl., ¶ 36; Opp. Br. at 6);

- Remarks by Professor Anne Marie Dannenberg of HSU, stating that she would not teach about genocide, and that Giovannetti was "mean spirited" (Giovannetti Decl., ¶36; Opp. Br. at 8); and

- Comments made by Dean Robert Snyder of HSU, including statements made in his August 6, 2004 memo, that (1) NAS "has to serve Native Americans as well as non-Native Americans at both the local and state level;" (2) the use of "appropriate Native American guest speakers" was "borderline on being racist"; and (3) that Dean Snyder "better not get a call from Victor Golla's doctor," which statement was purportedly made as a threat to Giovannetti. (Giovannetti Decl., ¶¶ 14, 21, 36; Opp. Br. at 7-8).

As explained below, these statements – while numerous – cannot provide a basis for a successful harassment claim.

To prevail on his hostile workplace claim, Giovannetti must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. See Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995). The more outrageous the conduct, the less frequently it must occur to make the workplace hostile. See Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991). Furthermore, to determine whether conduct is sufficiently severe or pervasive to violate Title VII, the court must look at all surrounding circumstances, including frequency, severity, whether the alleged conduct is threatening or humiliating, or merely an offensive utterance, and whether it interfered with Giovannetti's work performance. See, e.g., Vasquez v. City of Los Angeles, 349 F.3d 634, 649 (9th Cir. 2004). Finally, the allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the same racial or ethnic group as Giovannetti. See Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002); McGinest v. GTE Service Corp., 360 F.3d 1103, 1115 (9th Cir. 2004). Applying these standards to the aforementioned statements, it becomes clear that Giovannetti cannot state a cognizable claim.

United States District Court
For the Northern District of California

First, at least one of the statements is barred from the court's consideration. Specifically, Ms. Risling's statement that "white makes right" is not actionable since it predates the express waiver contained in the settlement agreement executed by the parties in the earlier dismissed lawsuit – a fact that Giovennatti himself concedes. See Opp. Br. At 4:27-5:1; Mitchell Decl., Ex. B at ¶ 4.

Additionally, five of the above statements are problematic for two separate reasons. First, the statements constitute hearsay and/or double-hearsay: President Rollin's statement that "non-Native professors can teach NAS courses maybe even better than native teachers" was overheard by three students, not Giovannetti. See Giovannetti Decl., ¶10. Professor Goodman's comments that Dr. Sherman was a "demigod," "nothing but a storyteller," and that whoever got hired by NAS "sure isn't going to get tenure as a result of a lawsuit," also appear to have made to other "American Indians on the [NASD Search Committee]" and not to Giovannetti directly. See id. at ¶ 36. Similarly, Professor Dannenberg's alleged comment that she would not "teach about genocide" was also "told [to] a student" rather than Giovannetti. Id. Finally, Dean Snyder's purported statement that the use of Native American guest speakers was "borderline on being racist" derives from a comment made by HSU's counsel to HSU employees (such as Dean Snyder), and was not made to Giovannetti directly. See Snyder Decl., ¶ 8. The hearsay nature of these comments makes their reliability suspect.

Second, the fact that these five statements were not made to Giovannetti directly is also relevant when analyzing the harassment claim from the perspective of California law under FEHA. California state courts have held that harassment – and in this case, harassing statements – involving others in the workplace is only relevant to a plaintiff's case if the plaintiff has "personal knowledge of it," or if the comments and/or conduct were made directly to plaintiff. See Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 520 (1998)(requiring "personal knowledge" of harassment); Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 611 (1989)(stating that "one who is not personally subjected

United States District Court
For the Northern District of California

to such remarks or touchings, must establish that she personally witnessed the harassing conduct and that it was in her immediate work environment). So too here, since Giovannetti has failed to allege or prove that the above five statements were made to him, that he overheard them, or that he has personal knowledge of them. Thus, they cannot be deemed relevant to his harassment claim.

Lastly, with respect to those comments that are neither barred, nor inactionable due Giovannetti's failure to tie them to his personal knowledge, they are insufficiently severe or outrageous. None of the comments is specifically race-based, and the majority of them focus on the nature of the search for NAS faculty and the NAS curriculum. See, e.g., Giovannetti Decl., Ex. B (remaining comments by President Rollin); ¶¶ 14, 21, 36 (remaining comments by Professor Goodman, Professor Dannenberg, Dean Carlton, and Dean Snyder). Indeed, the most egregious comments that Giovannetti can point to are Professor Goodman's comment that he did not understand what is meant by the "Native American perspective," and President Rollin's comment about other individuals who might agree with Giovannetti's "particular perspective on Native American Studies." It simply cannot be said, however, that these two comments as to "Native American" perspective, when viewed in context and taken as a whole, either constitute an "unreasonably abusive or offensive work-related environment" or "adversely affected [Giovannetti's] ability to do [his] job." See, e.g., Davis v. Monsanto Chem. Co., 858 F.2d 345, 350 (6th Cir. 1988). To be sure, the comments demonstrate that there is tension and ill will between the parties, but this cannot be said to be evidence of any race based harassment.

In sum, on the basis of the only evidence he points to, Giovannetti cannot prove or raise a material dispute of fact as to whether he was subjected to sufficiently severe or pervasive conduct such as to alter the conditions of his employment. As such, summary judgment on Giovannetti's hostile workplace claim based on racial harassment is GRANTED in HSU's favor.

United States District Court
For the Northern District of California

D. Retaliation

Giovannetti claims that HSU has impermissibly targeted him for discrimination and harassment in retaliation for the filing of his previous lawsuit. See Amended Complaint, ¶¶ 22-26. As Giovannetti's counsel clarified at the hearing on the instant motion, the specific protected conduct for which Giovannetti asserts he was retaliated against involved three separate communications: (1) Giovannetti's email to President Rollin dated August 5, 2003, in which Giovannetti asserted that HSU's refusal to hire his two faculty recommendations was discriminatory; (2) Giovannetti's filing of a discrimination charge with the EEOC dated August 27, 2003; and (3) Giovannetti's amended EEOC filing dated April 12, 2005. See, e.g., Snyder Decl., Ex. L. Giovannetti asserts that, in response to this protected activity, HSU retaliated against him by: subjecting him to verbal harassment; cancelling his classes; issuing negative performance evaluations; removing space that had been allocated for the NASD; engaging in disputes with Giovannetti over administrative issues (i.e., Dean Snyder's August 6, 2004 memo); and removing him as chair of the NASD. See Giovannetti Decl., ¶¶ 3, 12, 19; Opp. Br. at 7-8, 12-14. With the exception of Giovannetti's allegations regarding verbal harassment and the removal of NASD space, HSU does not dispute that any of these actions were taken, but disputes that they constitute actionable retaliation.

In order to make out a prima facie case of retaliation, Giovannetti must establish "that [he] acted to protect [his] Title VII rights, that an adverse employment action was thereafter taken against [him], and that a causal link exists between those two events." See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir.1994).

Here, the above three communications by Giovannetti constitute protected activity. See, e.g., 42 U.S.C. § 2000e-3(a) (filing a "charge" of discrimination under relevant statutes is protected); Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 611 (9th Cir. 2000)(employee's formal complaints to supervisor regarding "unlawful discrimination" is protected activity). Furthermore, the undisputed facts demonstrate that

United States District Court
For the Northern District of California

adverse action has, in fact, been taken against Giovannetti. See, e.g., Strother v. Southern Cal. Permanent Med. Group, 79 F.3d 859, 869 (9th Cir. 1996)(denial of administrative support and transfer of job duties may constitute "adverse action"); Winarto v. Toshiba Am. Electronics Components, Inc., 274 F.3d 1276, 1286 fn.7 (9th Cir. 2001)(undeserved negative performance evaluation may constitute "adverse action"); see also Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998)(general campaign of hostility and harassment, if sufficiently severe, may constitute "adverse action"). Accordingly, the remaining issue for Giovannetti to prove in order to satisfy his prima facie retaliation case is that of causation.

Preliminarily, the court notes that certain actions that Giovannetti complains of – namely, the verbal harassment and the purported removal of NASD space – cannot be a basis for Giovannetti's instant retaliation claim. First, with respect to the allegations of verbal harassment, for the reasons noted above in connection with Giovannetti's harassment claim, they do not actually constitute harassment. Accordingly, they are not considered evidence of retaliation here. Second, with respect to the removal of NASD space, HSU has submitted evidence demonstrating that the space in which NASD resides has, since its inception in 1991, been set aside for non-academic programs. See Helwig Decl., Ex. B. at 2. However, since NASD did not exist in 1991, it has only been given space there afterwards, none of which has been removed, and which is now mirrored in current plans. See id. Giovannetti has not, and cannot, submit any evidence that creates either a material dispute of fact as to this; he cannot, therefore, establish any kind of causal link between his protected activity and any decision to remove space, since such decision never in fact occurred.

With respect to the Giovannetti's remaining evidence of retaliation – the cancellation of his classes, his negative performance evaluation, his dispute with Dean Snyder over numerous "administrative" issues, and his removal as chair of the NASD – Giovannetti introduces material disputes of fact as to causation. For example, although HSU submits

testimony establishing that any course cancellations were due to low enrollment, Giovannetti has also averred – and HSU has not disputed – that the purported cancellations and/or schedule changes were made on August 8, 2003 – 3 days after Giovannetti sent his first email to President Rollin notifying him of Giovannetti's belief that unlawful discrimination had occurred. See, e.g., Helwig Decl., Ex. B at 1, 7; Giovannetti Decl., ¶¶ 3, 12. This short time frame in turn creates a material dispute of fact as to whether the retaliation also occurred. See, e.g., Passantino v. Johnson & Johnson, 212 F.3d at 507 ("when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred").

Similarly, material disputes of fact exist as to whether the remaining actions Giovannetti complains of constitute retaliation. The court notes that Giovannetti's negative performance evaluation, his disputes with Dean Snyder of administrative issues regarding the NASD, and his ultimate removal as chair of the NASD, all occurred in August 2004. See Helwig Decl., Ex. K; Snyder Decl., Ex. J, K, L, M. Although they took place nearly one year since the filing of Giovannetti's original EEOC complaint and his email to President Rollin, it cannot be said that one year's time between plaintiff's protected activity and defendant's allegedly retaliatory actions is sufficient to defeat causation on summary judgment, particularly where – as here – plaintiff has pled a retaliatory course of conduct. See, e.g., Yanowitz v. L'Oreal USA, Inc., 36 Cal 4th 1028, 1055 (2005)(sufficient to conclude "that the actions about which [plaintiff] complains considered collectively are sufficient to constitute prohibited [retaliation]. [The court] need not ... decide whether anything less than the totality of the alleged reprisals would be sufficient."). In sum, there is a dispute, based on the timing between Giovannetti's protected activity, and HSU's actions, as to whether such actions constituted an ongoing course of conduct that were related to Giovannetti's protected activity. The trier of fact is entitled to resolve this dispute.

Accordingly, for the above reasons, the court deems that a material dispute of fact

United States District Court
For the Northern District of California

exists on the issue of retaliation, and DENIES summary judgment as to this claim.

E. Failure to Prevent Discrimination

Giovannetti's fourth and final cause of action is for HSU's alleged failure to prevent discrimination and harassment. See Amended Complaint, ¶¶ 27-32; Cal. Gov't Code § 12940(k). This claim, rooted solely in FEHA, makes it an unlawful employment practice for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." See Trujillo v. North Co. Transit Distr., 63 Cal. App. 4th 280, 289 (1998).

Here, as HSU points out, Giovannetti's claim for failure to prevent or investigate discrimination fails as to his discrimination and harassment claims. It is axiomatic that, since no discrimination or harassment can be proven in the first instance, no action can lie for failure to prevent either. See Trujillo, 63 Cal. App. 4th at 289; Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004).

Giovannetti's retaliation claim, however, begs a different result. As discussed above, Giovannetti has proven the existence of triable facts regarding this claim. Accordingly, the issue for the court is whether section 12940(k) permits a claim for failure to prevent or investigate discrimination, when the only evidence before the court is that of retaliation. While the statute expressly contemplates discrimination and harassment claims, it is silent as to retaliation claims. There is also a lack of either Ninth Circuit or state authority that is conclusive on this point.[5] The court, however, is of the opinion that, in view of the liberal construction principles that underlie interpretation of FEHA, and the fact that retaliation claims themselves are defined as "discriminat[ion]" under section 12940(h), Giovannetti's claim should survive summary judgment. Thus, Giovannetti may proceed to trial on this claim insofar as it is based on a failure to prevent retaliation, which is a form of

---

[5] The court is in receipt of a supplemental brief filed by Giovannetti two days after the hearing on the instant motion, in which he undertakes an analysis of the instant issue. However, as Giovannetti failed to seek leave of court prior to filing the supplemental brief, the brief is accordingly STRICKEN.

United States District Court
For the Northern District of California

discrimination.[6] He may not proceed on this claim if based on race-based discrimination or harassment, as those claims are no longer viable.

Accordingly, summary judgment as to this claim is DENIED.

F. Conclusion

For the above reasons, the court (1) GRANTS summary judgment in favor of HSU with respect to Giovannetti's claims for unlawful race discrimination and hostile work place harassment; and (2) DENIES summary judgment with respect to Giovannetti's claims for retaliation and failure to prevent retaliation.

**IT IS SO ORDERED.**

Dated: June 12, 2006

PHYLLIS J. HAMILTON
United States District Judge

[6] The court notes that, at trial, the jury must make a finding as to retaliation prior to the determination of Giovannetti's claim for failure to prevent retaliation.